27324. SCHAFFER *v.* MOORE.

DECIDED MARCH 1, 1939.

*Joseph Jacobs, John B. McCallum,* for plaintiff in error.
*A. A. Baumstark, Paul Ginsberg,* contra.

SUTTON, J. J. M. Moore sued Dave Schaffer in the municipal court of Atlanta on an account for $863.79. The defendant answered denying any indebtedness on the account sued on, and alleged that the plaintiff was indebted to him in the sum of $144.97 on account of having fraudulently secured his signature to certain tickets for merchandise which he never received, but for which he paid. The plaintiff introduced evidence in proof of his account, at the conclusion of which the defendant made a motion for a nonsuit. This motion was overruled, and both sides then introduced further evidence, and the judge, before whom the case was tried without the intervention of a jury, found in favor of the plaintiff for the amount sued for. The defendant made a motion for new trial, which was overruled, and the defendant excepted.

1. An assignment of error on a refusal to award a nonsuit will not be considered where, after such refusal, the case is submitted to the jury, and a motion for new trial is made which includes the ground that the verdict is contrary to the evidence and without evidence to support it. *Wakefield* v. *Lee,* 18 *Ga. App.* 648 (90 S. E. 224); *Firemen's Insurance Co.* v. *Blount,* 52 *Ga. App.* 223, 224 (183 S. E. 111); *Foremost Dairy Products Inc.* v. *Sawyer,* 185 *Ga.* 702, 716 (5) (196 S. E. 436).

2. Was the judgment in favor of the plaintiff authorized by the evidence? The plaintiff in error contends that it was not, and we will now consider this question. The plaintiff was suing the defendant on an account for a meat bill from September 7, 1937, to October 2, 1937, which amounted to $863.79. The plaintiff's bookkeeper testified as to the correctness of the account, and the original ledger sheets of the account were admitted in evidence without objection. Dean Morrison, delivery and sales agent for the plaintiff, testified that he delivered to the defendant all of the meat covered by the account sued on, and further testified that, with the exception of one or two deliveries which were made by his brother, he delivered all of the meat to the defendant which was covered by the counter-claim. The plaintiff in error was basing his counter-claim on alleged overpayments from December 23, 1936, to October 1, 1937, and contended that his signature was by fraud obtained to certain tickets for meat which was never delivered to him. In this respect Morrison and three other witnesses for the plaintiff testified, in effect, that Morrison would stop by Schaffer's place of business practically every day, and if he had what the defendant wanted Schaffer, or some one authorized by him, would inspect and weigh the meat up, and then Schaffer or Mr. Kraar would sign for same, that is, with one stroke of the pencil Schaffer or Kraar would sign an original ticket and two carbon copies for the meat, the original would be kept by Schaffer, the second sheet would go to Moore, and the third copy would be kept in the book for Morrison, the sales agent. When there were two deliveries in one day, the meat on the first delivery was left with Schaffer and a ticket with two carbon copies would be made out for such delivery, but said ticket would not be signed at that time, but when the second delivery was made, and same accepted, a separate delivery ticket would be made out for the second delivery, and carbon sheets

would then be inserted over all of the delivery tickets, and thus, when Schaffer would sign, he would sign for the two deliveries by one stroke of the pencil, and most of the time Schaffer himself, while he had the book in his hands signing said delivery tickets, would tear out the tickets that were his copies and then give the book back to Morrison, the sales and delivery agent. The evidence also showed, and the defendant admitted on cross-examination, that during the period that he did business with the plaintiff he was furnished weekly statements showing the daily purchases of meat from the plaintiff.

It is not necessary to refer to all of the evidence, but it is sufficient to say that a careful consideration of the evidence shows that the judgment in favor of the plaintiff was authorized. Therefore the judge did not err in overruling the motion for new trial.

*Judgment affirmed. Stephens, P. J., concurs. Felton, J., dissents.*

FELTON, J., dissenting. This court is in a peculiar position in this case. Some of the actual sales tickets are sent up in the brief of evidence. We are asked to base our decision on an examination of these tickets. Inasmuch as the brief of evidence could have set forth just what is shown by these tickets I am in favor of considering them. The evidence shows that the salesman of the defendant in error made out most of the tickets. He testified that his ticket book was composed of white and yellow tickets, a white ticket followed by a yellow, a white by a yellow, etc.; the yellow sheets had the same numbers as the white sheets preceding them, and that when he made a delivery he would enter up what he delivered on one original ticket and would make two carbon copies on the following sheets. In a large number of instances the yellow carbon copies coming right under and next to the white originals preceding them are not copies of the originals, but the yellow carbons coming after the succeeding white sheets are copies of the preceding white sheets, and on the reverse side of some of the yellow sheets coming after the first white sheets there appears a copy of the contents of the white sheet immediately preceding it, indicating that though the writing on the preceding white sheet does not appear on the front of the yellow sheet, the yellow sheet was in the book at the time the entry was made. To make the picture clearer: ticket number 263-5 is a white sheet. The yellow sheet under-

neath is number 263-5. The two are in no way alike. Number 263-6 is the yellow sheet under the next white sheet, and is a carbon copy of the white number 263-5. The amounts on 263-5 and 263-6 were sued for. No explanation was made as to what became of the missing white sheet, or as to why each yellow sheet did not correspond with its white sheet similarly numbered. The plaintiff in error said he never received anything but the white sheets. An attempt was made to explain this unusual state of things. That explanation was that when several orders were filled the same day the plaintiff in error would sign for each order, each order being on a separate ticket, at one time. This is no explanation of anything but the signatures. Nor does the testimony of the salesman to the effect that he delivered all the goods shown on the tickets amount to positive testimony that he did so. It was highly improbable that he could remember so many details, and the import of his testimony was simply that the tickets were correct. I do not think a finding was authorized for the price of the goods represented on these mysterious, unexplained tickets. They bear on their faces the badge and suspicion of fraud, and in the absence of a satisfactory prima facie explanation, as a matter of law should have been condemned and disregarded.